## PACIFIC STATES AUTOMOTIVE FINANCE CORPORATION, a Corporation, Respondent, v. W. K. ADDISON, Appellant.

[261 Pac. 683.]

SALES—FRAUD—PROMISSORY STATEMENTS—BUSINESS NAMES—FOREIGN COMPANY—"DOING BUSINESS WITHIN STATE"—BILLS AND NOTES—HOLDER IN DUE COURSE.

1.  Fraud in inception of sale contract for washing-machines for which trade acceptances were given *held* not shown, notwithstanding evidence that seller's agent made oral promises concerning delivery of merchandise and methods to be employed in its sale, where sale contract expressly provided that no representation, agreement or covenant outside of those contained therein would be recognized, and first words of instrument were, "read before signing."

2.  Where neither contract for sale of washing-machines nor trade acceptances given therefor at time of sale were completed within the state of Idaho and transaction was purely interstate, failure to file, under Laws 1921, chap. 212, certificate on part of seller company having fictitious name and under which it

did business did not render transaction as to trade acceptances *prima facie* fraudulent.

3. In action by indorsee on trade acceptances, facts *held* not to show that title of indorser to instruments under C. S., sec. 5922, was defective so as to remove presumption, under sec. 5926, attaching in favor of indorsee, that every holder is deemed *prima facie* to be holder in due course.

4. Where consideration paid by indorsee of trade acceptances was more than nominal, fact that it acquired the instrument at an excessive rate of discount *held* not to make its good faith a question for jury, where there was nothing in transaction surrounding purchase of instruments by indorsee to charge it with bad faith.

5. Holder of negotiable instruments is not bound at his peril to be on the alert for circumstances exciting suspicions of wary vigilance, nor does he owe to party putting paper afloat the duty of active inquiry in order to avoid imputation of bad faith.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Dana E. Brinck, Judge.

Action to recover on trade acceptances. Judgment for plaintiff. *Affirmed.*

Publisher's Note.

1. Future promise as fraud, see notes in 10 L. R. A., N. S., 640; 24 L. R. A., N. S., 735. See, also, 12 R. C. L. 254.

2. Validity of contracts as affected by failure to comply with condition of right to do business under assumed or fictitious name or designation not showing names of persons interested, see note in 45 A. L. R. 207.

3. Presumption in favor of holder of commercial paper, see note in 17 L. R. A. 326. See, also, 3 R. C. L. 1032.

4. Payment of less than value by transferee as affecting *bona fides,* see note in 17 Ann. Cas. 386. See, also, 3 R. C. L. 1055.

5. See 3 R. C. L. 1074.

See Agency, 2 C. J., sec. 541, p. 857, n. 71.

Bills and Notes, 8 C. J., sec. 709, p. 499, n. 8; sec. 717, p. 508, n. 71; sec. 1289, p. 980, n. 21.

Commerce, 12 C. J., sec. 26, p. 28, n. 12.

Fraud, 26 C. J., sec. 25, p. 1087, n. 43.

Names, 29 Cyc., p. 270, n. 43.

Sales, 35 Cyc., p. 84, n. 13.

Johnson & Nixon, for Appellant.

The title of Alexander or Cascade Products Company to the instruments was defective. (C. S., sec. 5922; *Pocatello Security Trust Co. v. Henry,* 35 Ida. 321, 328–331, 27 A. L. R. 337, 206 Pac. 175; *Wright v. Spencer,* 39 Ida. 60, 62–67, 226 Pac. 173; *Shellenberger v. Nourse,* 20 Ida. 323, 329, 333, 334, 118 Pac. 508; *German-American Bank v. Cunningham,* 97 App. Div. 244, 89 N. Y. Supp. 836; *First National Bank v. Campbell,* 39 Ida. 736, 741, 230 Pac. 43; Laws 1921, chap. 212, p. 424.)

The burden of proof was upon respondent to show that it took without notice. (C. S., sec. 2926; *First National Bank v. Pond,* 39 Ida. 770, 775, 230 Pac. 344.)

There was ample evidence in the record to impeach and contradict the testimony of Mr. Lyen, sole witness for respondent, and from which the jury might reasonably have drawn the inference that the respondent was not a holder in due course and consequently respondent did not sustain the burden of proof and it was error for the court to take the case from the jury. (*First Nat. Bank v. Pond,* 39 Ida. 770, 775–776, 230 Pac. 344, and cases cited; *Winter v. Nobs,* 19 Ida. 18, 27–29, Ann. Cas. 1912C, 302, 112 Pac. 525; *Park v. Johnson,* 20 Ida. 548, 553–555, 119 Pac. 52; *Park v. Brandt,* 20 Ida. 660, 119 Pac. 877; *Vaughan v. Johnson,* 20 Ida. 669, 119 Pac. 879, 37 L. R. A., N. S., 816.)

The court would not permit Lyen, on cross-examination, to testify about his acquaintance and dealings with Domestic Products Company, which was the name under which Alexander conducted business from February, 1924, when Cascade Products Company went out of business, and this ruling is assigned as error because of an agreement in writing between respondent and Alexander doing business as Domestic Products Company, which agreement is referred to in the answer and which provided that action upon these trade acceptances be deferred for a certain time, or until receipt of the goods, and which contract was alleged in the answer to contain statements showing that when respondent took

over the trade acceptances it had full knowledge of the terms and conditions of the contract under which the washing-machines were sold to Addison.

This original contract was shown by the evidence to be in the possession of plaintiff and it was given reasonable notice in the answer to produce it. The plaintiff failed to produce it or to account for its absence. Under these circumstances secondary evidence of its contents was admissible (C. S., sec. 7970, subd. 2).

Gustave Kroeger and Harry Keyser, for Respondent.

No fraud shown in the inception of the contract.

(a) Principal not bound by representations of agent going beyond the terms of the contract.

(b) For the same reason there was no agreement not to transfer the trade acceptances.

Principal not bound by representations of agent where contract provides that no agreement save those in the contract would be recognized. (2 C. J. 857; *Bruner v. Kansas Moline Plow Co.*, 7 Ind. Ter. 506, 104 S. W. 816; *Blackstad Merc. Co. v. J. W. Porter & Co.* (Tex. Civ. App.), 158 S. W. 216; *Steiner Mfg. Co. v. Kochaniewicz* (N. J.), 128 Atl. 608; *Colonial Development Corp. v. Bragdon*, 219 Mass. 170, 106 N. E. 633; *Schuster v. North American Hotel Co.*, 106 Neb. 672, 184 N. W. 136, 186 N. W. 87; *Kasch v. Williams* (Tex. Civ. App.), 251 S. W. 816; *Southern Fertilizer Co. v. Harrell*, 17 Ga. App. 642, 87 S. E. 911; *Locomobile Co. of America v. Belasco*, 32 Cal. App. 329, 162 Pac. 920; *American Emigrant Co. v. Clark*, 47 Iowa, 671.)

Statutes requiring firms doing business under fictitious names to file certificates have no application, as transaction was wholly interstate. (*D. M. Ferry & Co. v. Smith*, 36 Ida. 67, 209 Pac. 1066; *General Motors Acceptance Corp. v. Lund*, 60 Utah, 247, 208 Pac. 502; *Dunn-Salmon Co. v. Edwards*, 60 Pa. Sup. Ct. 340.)

Mere suspicious circumstances will not charge the purchaser with bad faith and notice of alleged defenses; there must be actual notice either of the facts constituting the

defense or of such facts and circumstances that the purchase of the paper in the face of such knowledge amounts to bad faith. (*First Nat. Bank v. Pond,* 39 Ida. 770, 230 Pac. 344; *Butte Machinery Co. v. Jeppesen,* 41 Ida. 642, 241 Pac. 36; *Whittlesey v. Drake,* 43 Ida. 623, 253 Pac. 621.)

In the absence of evidence showing that plaintiff in an action on a note did not take the note in due course or showing notice of facts constituting equities or defenses or such circumstances that act in taking note amounted to bad faith, plaintiff was entitled to directed verdict. (*Butte Machinery Co. v. Jeppesen; Whittlesey v. Drake, supra.*)

The early and present doctrine is that the right of a *bona fide* holder for value in the usual course of business of negotiable paper cannot be defeated by proof that he was negligent and omitted to make inquiries which common prudence would have dictated. (*Richardson v. Monroe,* 85 Iowa, 359, 39 Am. St. 301, 52 N. W. 339; *Lake v. Reed,* 29 Iowa, 258, 4 Am. Rep. 209; *Lane v. Evans,* 49 Iowa, 156; *Pond v. Waterloo Agricultural Works,* 50 Iowa, 596.)

To charge the holder of a negotiable promissory note with notice of infirmities, he must have been guilty of something more than mere negligence in taking the note. Indeed, gross negligence, it is said, is not sufficient, and nothing but fraud is sufficient to destroy the character of the holder as one who acted in good faith. (*Cook v. Weirman,* 51 Iowa, 561, 2 N. W. 386.)

BUDGE, J.—This action was brought by respondent, as indorsee, upon three certain trade acceptances given by appellant in payment of and for the purchase of a number of dish-washers and washing-machines. Contemporaneously with the execution and delivery of trade acceptances, on November 28, 1923, a written contract of sale was entered into between appellant, as buyer, and the Cascade Products Company, as seller, covering the terms of their agreement for the purchase and sale of the machines mentioned. The contract called for the shipment of the articles named at

"earliest convenience," and contained the following stipulation:

"The Buyer hereby acknowledges the purchase of the above merchandise in good faith and that this order cannot be countermanded, and that all representations, agreements and covenants between said Seller and Buyer are set forth herein and none other are valid, binding or recognized."

The cause was tried to the court and a jury, and after the introduction of evidence by both sides, the court directed a verdict for respondent for the full amounts of the three trade acceptances, together with interest and attorney fees. This appeal is from the judgment entered on the verdict.

[1] Specifications of error made and relied upon by appellant are predicated upon the action of the court in directing the jury to return a verdict for respondent, and in striking out and sustaining respondent's objections to certain evidence offered by appellant.

The dealings had with appellant by which the contract for the sale of the machines was executed and the trade acceptances procured were through an agent of the Cascade Products Company, one Johnson. It is claimed by appellant that the agent made certain false and fraudulent representations concerning transfer of the trade acceptances and the purposes for which they were desired, as a means of obtaining appellant's signature thereto, as showing that the title of the Cascade Products Company to the instruments was defective. The giving of the trade acceptances was an incident of the execution of the contract, and there is no sufficient showing of fraud in the inception of the contract. It appears from the evidence that the statements made by the agent concerning delivery of the merchandise and methods to be employed in its sale, were contained in the contract itself. If any other, or oral, statements or promises were made to appellant by the seller's agent, and not with reference to the subject matter, the principal would not be bound thereon, because of the express provision in the contract that no representation, agreement or

covenant outside of those contained therein would be recognized. (2 C. J. 857; *Bruner v. Kansas Moline Plow Co.*, 7 Ind. Ter. 506, 104 S. W. 816; *Schuster v. North American Hotel Co.*, 106 Neb. 672, 184 N. W. 136, 186 N. W. 87; *Locomobile Co. of America v. Belasco*, 32 Cal. App. 329, 162 Pac. 920; *Colonial Development Corp. v. Bragdon*, 219 Mass. 170, 106 N. E. 633; *Steiner Mfg. Co. v. Kochaniewicz* (N. J.), 128 Atl. 608; *Blackstad Mercantile Co. v. J. W. Porter & Co.* (Tex. Civ. App.), 158 S. W. 216.)

"The general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions, nor upon the mere failure to perform a promise, or an agreement to do something at a future time . . . . " 12 R. C. L., p. 254, sec. 21.

It must be conceded that the written contract was intended to embody and did contain the final terms of the agreement between appellant and the Cascade Products Company; and appellant thereby had actual notice of the agent's want of authority to make any statements or promises extrinsic thereto. It is not here advanced by appellant that he was induced by fraud or deceit not to read the contract, or that he did not read it in fact. The first words contained in the instrument were: "NOTE: READ BEFORE SIGNING."

[2] It is contended by appellant that, under the provisions of Sess. Laws 1921, chap. 212, pp. 424, 425, requiring the filing of a certificate in the office of the county recorder of the county in which business is carried on, conducted or transacted under any designation, name or style, partnership, or otherwise (except corporations), other than the true and real name or names of the person or persons conducting or transacting such business or having an interest therein, the failure to file such a certificate for the Cascade Products Company in Ada county rendered the transaction relating to the execution and delivery of the trade acceptances *prima facie* fraudulent. It is not disputed that "Cascade Products Company" was a fictitious name, so far as the statute is concerned, and that the person operating it

during the period involved was one W. L. Alexander, who was not, during any of the time, within the state of Idaho. Whether the Cascade Products Company was required to be amenable to this statute depends upon a determination of whether the transaction had with appellant over which this controversy arose comes within the terms "carry on, conduct or transact business in this state," enunciated in the statute. The statute does not appear to have been construed by any decision of this court, but there are numerous cases in this state and others touching similar statutes from the standpoint of foreign corporations complying with the laws relative to filing copies of their articles of incorporation, etc., as a prerequisite of doing business within the state to which the corporations are foreign, and what does or does not constitute doing business by them. Such a question was before this court in the recent case of *Portland Cattle Loan Co. v. Hansen Livestock & F. Co.*, 43 Ida. 343, 251 Pac. 1051, and it was there held that the taking of applications for loans by an agent of a foreign corporation who forwarded the same to the home office of such foreign corporation, there to be approved or disapproved; and the securing of a note and mortgage, executed within the foreign state but made payable to the foreign corporation at its home office, would not constitute doing business, so as to be offensive to the statutes above referred to. After citing a number of authorities on the proposition, this observation was made in the opinion:

"From our investigation of the authorities upon the question of when a foreign corporation is doing business within a state it is apparent that each case must be decided upon the particular facts and circumstances entering into the transaction. The authorities upon the question are irreconcilable."

See, also, *Burlington Sav. Bank v. Grayson*, 43 Ida. 654, 254 Pac. 215.

In the instant case, the contract signed by appellant shows the Cascade Products Company to have been located at Seattle, Washington, and the order for the goods sold

necessary to be accepted by the company before any liability of the trade acceptances would accrue. The trade acceptances themselves were completed outside of the state by the signature of W. L. Alexander, for the Cascade Products Company, but, for the convenience of the parties, payable through the Boise City National Bank. Neither the contract nor the trade acceptances having been completed within the state of Idaho, the transaction was purely interstate, and we are constrained to hold, under these circumstances, that the failure to file a certificate, on the part of the Cascade Products Company, under the provisions of Sess. Laws 1921, chap. 212, *supra,* did not render the transaction relative to the execution and delivery of the trade acceptances *prima facie* fraudulent.

[3] We conclude that there was no showing that the title of the Cascade Products Company to the instruments was defective, under C. S., sec. 5922, or so as to remove the presumption attaching in favor of respondent as indorsee of the trade acceptances, that every holder is deemed *prima facie* to be a holder in due course. (C. S., sec. 5926.)

[4] For the purpose of showing that respondent was not a holder of the instruments in due course, appellant points out that the evidence discloses that respondent acquired the paper at an excessive rate of discount, and that other facts and circumstances surrounding the transaction were sufficient to have put respondent on inquiry before it purchased the paper, and should have been submitted to the jury on the question of respondent's good faith. There is some question as to whether the trade acceptances were discounted for ten per cent or more. The record discloses that there was a discount of ten per cent and a ledger credit of $118.20. No explanation is made of the latter item. But the consideration paid by respondent was certainly more than nominal, and unless other circumstances were shown as imputing bad faith on the part of the purchaser, the action of the trial court in directing a verdict for respondent would not be unwarranted. (8 C. J., p. 508, sec.

717; *McNamara v. Jose,* 28 Wash. 461, 68 Pac. 903; *First Nat. Bank v. Egbers,* 130 Wash. 221, 226 Pac. 492.)

It was shown that respondent previously had had many other satisfactory transactions with the Cascade Products Company in the purchase of its paper, involving a considerable amount of money; that it had been furnished a financial statement by the Cascade Products Company, and was advised by another concern, which had similar dealings with the Cascade Products Company, that its paper was a choice investment. It was represented to respondent that the trade acceptances held by the Cascade Products Company were executed in settlement for merchandise delivered. And if it be admitted that respondent had knowledge that the Cascade Products Company was in financial straits at the time of the purchase of these particular trade acceptances, and that it later came to respondent's attention that the merchandise for which they were given had not been delivered, yet there is nothing in the transaction surrounding the purchase of the paper by respondent to charge it with bad faith. [5] The holder of negotiable instruments is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicions of wary vigilance; he does not owe to the party who puts paper afloat the duty of active inquiry in order to avert the imputation of bad faith. (*Butte Machinery Co. v. Jeppesen,* 41 Ida. 642, 241 Pac. 36; *Whittlesey v. Drake,* 43 Ida. 623, 253 Pac. 621; *McNamara v. Jose, supra.*)

The trial court properly directed a verdict for respondent.

An extended consideration of specifications of error relating to the rejection of evidence offered by appellant would not change the result.

The judgment is affirmed.   Costs to respondent.

Wm. E. Lee, C. J., and Taylor and T. Bailey Lee, JJ., concur.

Givens, J., dissents.