IN THE SUPREME COURT OF THE STATE OF IDAHO

Docket No. 38138

MATHEW R. BENNETT and BENJAMIN L. )
WALTON, )
             )    Boise, February 2012 Term
      Plaintiffs-Appellants, )
             )    2012 Opinion No. 73
v. )
             )    Filed: April 27, 2012
NANCY PATRICK, )
             )    Stephen W. Kenyon, Clerk
      Defendant-Respondent. )
_____ )

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. David C. Nye, District Judge.

District court's order denying attorney fees is <u>reversed</u> and the case is <u>remanded</u>.

Johnson Olson Chtd., Pocatello, for appellants. L. Charles Johnson, III argued.

Merrill & Merrill, Chtd., Pocatello, for respondent. Brendon C. Taylor argued.

_____

J. JONES, Justice,

   This is an attorney fee case. After prevailing at trial, plaintiffs Mathew Bennett and Benjamin Walton sought fees under I.C. § 12-120(4), which provides for fees in personal injury actions with claims under $25,000. The district court declined to award fees, holding that the plaintiffs waived any entitlement to fees because their complaint sought more than $25,000 each and because they asked for an even greater amount at trial. We reverse the district court's holding and remand for a determination of fees.

## I.
## BACKGROUND

   On October 18, 2007, Bennett and Walton were injured when their car was struck by one driven by defendant Nancy Patrick. On July 9, 2008, Bennett and Walton wrote to Allstate Insurance Co., Patrick's insurer, proposing to settle their claims for $20,000 and $23,000, respectively. The plaintiffs' demand letter included statements of their injuries and the attendant

damages. The letter also informed Allstate that Bennett and Walton would seek attorney fees under I.C. § 12-120(4), in addition to damages and costs, should the case proceed to trial. In response, Allstate offered Bennett $2,300 and Walton $4,600. Allstate subsequently offered them $2,600 and $5,000, respectively. Bennett and Walton then filed this action.

The district court granted summary judgment against Patrick on the issue of her liability for the plaintiffs' injuries, finding Patrick admitted as much. The case went to jury trial exclusively on the issue of Bennett and Walton's damages. The jury awarded Bennett $3,978.47 and Walton $10,030.92. The parties filed motions seeking adjustments to the amount of the judgment, as well as costs and attorney fees. In response, the district court adjusted the plaintiffs' awards to account for prejudgment interest, collateral sources of recovery, and costs, granting Bennett a total of $5,065.11 and Walton a total of $10,671.63. The court found Bennett and Walton to have prevailed in the action but denied them a fee award under I.C. § 12-120(4), holding that they had waived a claim for fees under that statute by asking for more than $25,000 in their complaint and by including a significant new item of damage in their evidence offered at trial. Bennett and Walton then moved the court to reconsider its decision denying fees, and they moved to amend their complaint to "conform to the evidence, since the amount awarded by the jury was under $25,000." The court denied both motions. Bennett and Walton timely appealed.

## II.
## ANALYSIS

### A.     Standard of Review.

A district court's decision whether to award attorney fees is a matter of discretion, unless the fee award "depends on the interpretation of a statute." *Contreras v. Rubley*, 142 Idaho 573, 576, 130 P.3d 1111, 1114 (2006). Statutory interpretation presents a question of law over which this Court exercises free review. *Id.*

### B.     Bennett and Walton's prayer for relief did not preclude them from obtaining fees under I.C. § 12-120(4).

The district court erred when it determined that Bennett and Walton's complaint disqualified their fee request under Section 12-120(4). Their complaint included separate requests for relief—one for Bennett and one for Walton. It prayed for:

> Special damages for plaintiff Mat [sic] Bennett's past medical bills of $1,937.71, future medical bills for over the counter pain medication, and lost wages of $2,600.00; and general damages for pain and suffering in an amount in excess of

2

> $10,000.00, or such other amounts as may be proven to a jury at trial, but less than $25,000.00 at this time[.]

It also sought:

> Special damages for plaintiff Ben Walton's medical bills of $2,992.92, future medical bills for over the counter pain medication, lost wages of $1,200.00, and general damages for pain and suffering in an amount in excess of $10,000.00, or such other amounts as may be proven to a jury at trial, but less than $25,000.00 at this time[.]

The complaint also requested fees under Section 12-120(4). The district court said, "Although the Complaint does not include a different alleged injury or significant new item of damage not set forth in the statement of claim, the Plaintiff's [sic] Complaint does not comply with § 12-120(4) in that each Plaintiff asks for more than $25,000."

Bennett and Walton argue that they did not seek more than $25,000 each in their complaint. Alternatively, they argue that regardless of the amount pleaded, they are entitled to fees so long as they did not allege or introduce evidence of new injuries or significant new items of damage. Patrick responds that the district court correctly read the complaint to pray for more than $25,000 for each plaintiff. Patrick argues Bennett and Walton were not affirmatively required to plead an amount under $25,000, but they are precluded from recovering fees by virtue of having pleaded for more than $25,000 in damages.

> Idaho Code § 12-120(4) provides:
>
> In actions for personal injury, where the amount of plaintiff's claim for damages does not exceed twenty-five thousand dollars ($25,000), there shall be taxed and allowed to the claimant, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney's fees. For the plaintiff to be awarded attorney's fees for the prosecution of the action, written demand for payment of the claim and a statement of claim must have been served on the defendant's insurer, if known, or if there is no known insurer, then on the defendant, not less than sixty (60) days before the commencement of the action . . . .
>
> If the plaintiff includes in the complaint filed to commence the action, or in evidence offered at trial, a different alleged injury or a significant new item of damage not set forth in the statement of claim, the plaintiff shall be deemed to have waived any entitlement to attorney's fees under this section.

I.C. § 12-120(4).

The Court's decision in *Cox v. Mulligan*, 142 Idaho 356, 128 P.3d 893 (2005) sets the stage

for our analysis of this issue. There, we rejected an argument that a complaint must allege damages under $25,000.00 to meet the requirements of I.C. § 12-120(4). 142 Idaho at 358, 128 P.3d at 895. The complaint in *Cox* requested "[s]pecial damages of $2,640.61 and such further amount as may be proved at trial and [g]eneral damages as proved at trial." *Id.* at 356, 128 P.3d at 893 (internal quotation marks omitted; alterations in original). We determined that "Idaho Code § 12-120(4) does not require that [a] plaintiff plead damages of $25,000.00 or less." *Id.* We explained that the statutory reference to the "amount of plaintiff's claim for damages" means "the amount set forth in the statement of claim, not the amount pled in the complaint." *Id.* at 357–58, 128 P.3d at 894–95. The statute does not refer to pleadings. *Id.* "[T]he allegations in the complaint are relevant only if they include a different alleged injury or a significant new item of damage not set forth in the statement of claim." *Id.* at 358, 128 P.3d at 895. The complaint in *Cox*, despite failing to expressly pray for damages in an amount less than $25,000, did not preclude application of I.C. § 12-120(4). *Id.*

It is therefore immaterial whether Bennett and Walton's complaint prayed for more than $25,000. As the district court expressly stated, the complaint did not allege a different injury or significant new item of damage. Accordingly, the complaint here does not preclude application of I.C. § 12-120(4). The district court erred as a matter of law when it determined that the prayer in the complaint precluded a fee award.[1]

### C. The plaintiffs did not offer evidence at trial of a different injury or significant new item of damage.

The district court also erred when it determined Bennett and Walton's trial evidence precluded them from obtaining fees under Section 12-120(4). The plaintiffs' demand letter to Allstate requested $20,000.00 for Bennett and $23,000.00 for Walton. These amounts were slightly less than the plaintiffs' estimated damages at the time of the demand, which were $20,600.00 for Bennett and $23,200.00 for Walton. In Bennett's summary of damages, he noted: past medical bills of $1,937.71; estimated future medical bills of $2,500.00; lost wages of

---

[1] The plaintiffs moved to amend their complaint to clarify that they intended to seek no more than $25,000 in damages. The court denied their motion. Bennett and Walton's theory is that, since the jury awarded less than $25,000, the evidence at trial showed that no more than $25,000 was in issue. Patrick argues that the motion was untimely and that the motion would not conform to evidence offered at trial because that evidence could have shown more than $25,000 in damages. Because we have determined that the amount pleaded does not affect the plaintiffs' ability to recover fees here, we need not discuss whether the court erred in denying the motion to amend.

4

$2,600.00; and pain and suffering of $13,500.00. In Walton's summary of damages, he noted: past medical bills of $2,992.92; estimated future medical bills of $2,500.00; lost wages of $1,200.00; and pain and suffering of $16,500.00. A plaintiff waives any entitlement for fees under I.C. § 12-120(4) if, "in evidence offered at trial, [he or she includes] a different alleged injury or a significant new item of damage not set forth in the statement of claim."

The district court found that the plaintiffs did not offer evidence of a different injury at trial. The court determined, however, that Bennett sought $30,734.47 in damages and Walton sought $41,252.72; and "the [c]ourt [saw] the increase in damages . . . as a significant new item of damages." This was because "[t]he new amount [Bennett sought] at trial was almost 50% higher than what was in the statement of claim" and "[t]he new amount for Walton was almost 100% higher than what was in his statement of claim."[2] The court did not identify any specific new item of damage, but it held that Bennett and Walton's increased damage requests precluded them from seeking fees under I.C. § 12-120(4).

Bennett and Walton contend that they did not offer evidence of a significant new item of damage, but acknowledge that the amounts requested at trial were considerably more than set out in their statement of claim. Patrick contends, as the district court held, that the increased dollar amounts Bennett and Walton sought at trial qualified as significant new items of damage. Patrick also argues that Bennett and Walton offered evidence of new injuries, though she does not give a good explanation of what those new injuries were.[3]

The district court correctly determined that Bennett and Walton did not offer evidence of a different injury at trial. The question is whether the court correctly found that they had offered evidence of a significant new item of damage. We must first determine what an item of damage is.

---

[2] The actual difference between the plaintiffs' requests in their statement of claim and their requests at trial was 53.67% for Bennett and 79.36% for Walton. So, the district court was correct that Bennett's trial request was about a 50% increase, but the court overstated Walton's.

[3] Patrick did zero in on the minutiae of Bennett's claimed injuries, noting that in the statement of claim Bennett mentioned a "low back injury" and then at trial complained of "an injury to his right sacroiliac joint." Patrick failed to explain what a sacroiliac joint is, but did acknowledge that Bennett's chiropractor testified "a low back injury and a right sacroiliac joint injury are closely related." It might also be noted that Bennett claimed to have sustained injury to his right sacroiliac joint when undergoing a medical examination requested and paid for by Allstate. It would not seem to be much of a stretch to consider the sacroiliac joint injury in the low back to be part of the initial back injury claim. After all, it involved the same part of Bennett's anatomy. A new injury would involve a different part of the anatomy.

The statute does not define the term "item of damage." However, the statement of claim is to include:

> (a) An itemized statement of *each and every item of damage* claimed by the plaintiff including the amount claimed for general damages and the following items of special damages: (i) medical bills incurred up to the date of the plaintiff's demand; (ii) a good faith estimate of future medical bills; (iii) lost income incurred up to the date of the plaintiff's demand; (iv) a good faith estimate of future loss of income; and (v) property damage for which the plaintiff has not been paid.

I.C. § 12-120(4) (emphasis added).

The items of damage that must be included in the statement of claim are equivalent to general damages and special damages, and the special damages listed are past and future medical expenses, past and future lost income, and property damage. The items of damages specified compare to the elements of damage recoverable in a personal injury action. For example, IDJI 9.01 states:

> The elements of damage the jury may consider are:
>
> A. Non-economic damages
>
> 1. The nature of the injuries;
>
> 2. The physical and mental pain and suffering, past and future;
>
> 3. The impairment of abilities to perform usual activities;
>
> 4. The disfigurement caused by the injuries;
>
> 5. The aggravation caused to any preexisting condition.
>
> B. Economic damages
>
> 1. The reasonable value of necessary medical care received and expenses incurred as a result of the injury [and the present cash value of medical care and expenses reasonably certain and necessary to be required in the future];
>
> 2. The reasonable value of the past earnings lost as a result of the injury;
>
> 3. The present cash value of the future earning capacity lost because of the injury, taking into consideration the earning power, age, health, life expectancy, mental and physical abilities, habits, and disposition of the plaintiff, and any other circumstances shown by the evidence.
>
> 4. The reasonable value of necessary services provided by another in doing things for the plaintiff, which, except for the injury, the plaintiff would ordinarily have performed [and the present cash value of such services reasonably certain to be required in the future];

6

5. [Any other specific item based upon the evidence.]

Therefore, we hold that items of damage and elements of damages are the same.

The statute also provides that a plaintiff waives the entitlement to an award of attorney fees if he or she "includes in the complaint filed to commence the action, or in evidence offered at trial, . . . a significant *new item of damage* not set forth in the statement of claim." I.C. § 12-120(4) (emphasis added). It does not state that the entitlement is waived by seeking to recover at trial of a significant *new amount claimed* for the item of damage. Although the statement of claim is required to include "a good faith estimate of future medical bills" and "a good faith estimate of future loss of income," I.C. § 12-120(4)(a) the statute does not state that entitlement to attorney fees is waived if the plaintiff seeks to recover at trial a significantly increased amount for any item of damage listed in the statement of claim, nor does it state that entitlement to attorney fees is waived if the estimates of future medical bills or future loss of income were not made in good faith.

By submitting a statement of claim to the insurance company, offering to settle a cause of action, the injured person is taking the risk that future medical expenses and/or lost wages will end up being significantly greater than anticipated. It is not uncommon for the initial diagnosis of the injury to change if new symptoms develop or the injured person does not recover as expected, nor is it uncommon for an injured person not to heal as quickly as anticipated. The statute does not provide that the injured person waives a claim for attorney fees if the injury turns out to be more serious than initially diagnosed, resulting in increased medical expenses and increased lost wages.

In Benjamin Walton's statement of claim, he asked for the sum of $23,000.00 to settle his claim. He claimed special damages of $2,992.92 for past medical expenses, $1,200.00 for lost wages, and $2,500.00 for future pain medications, and he claimed general damages for pain and suffering, which would have to be in the amount of $16,307.08 in order for the total to be $23,000.00. At trial, he sought to recover increased amounts for those items of damage, but he did not offer evidence of a new item of damage. He sought to recover for a type of treatment (physical therapy and trigger point injections) not included in the statement of claim, but a new type of treatment is not a new item of damage. The item of damage was future medical expenses, not the specific type of treatment needed in the future.

7

In Matthew Bennett's statement of claim, he asked for the sum of $20,000.00 to settle his claim. He claimed special damages of $1,937.71 for past medical expenses, $2,600.00 for lost wages, and $2,500.00 for pain medications in the future, and he claimed general damages for pain and suffering, which would have to be in the amount of $12,962.29 in order for the total to be $20,000.00. Defendant contends that Bennett offered evidence of a significant new item of damage because his chiropractor "opined that Bennett would need ongoing treatment with 'manipulative therapy, side posture, ultrasound, electrical stimulation' and office visits on an as needed basis because of ongoing soreness in his low back." Actually, when testifying from his chart notes about Bennett's last visit, which was four months before trial, the chiropractor stated, "He'll be treated with manipulative therapy, side posture, ultrasound, electrical stimulation, and we'll see him PRN. We'll see him when he needs it." The chiropractor did not testify as to any amount of future care that he believed Bennett would need. Later, he testified, "It would be more probable than not that he'd need some additional treatment on his low back. I just haven't seen him." He also testified that Bennett's likelihood of a full recovery was "pretty good." This was not evidence of a new item of damage. It was merely speculation that Bennett may need some undefined amount of treatment in the future. A type of treatment not mentioned in the statement of claim is not a new item of damage. Defendant also points to statements by Bennett's counsel during his closing argument asking the jury to give Bennett $5,000 so he can get better. Argument by an attorney is not evidence.

Neither Walton nor Bennett offered evidence of a new item of damage. They both simply sought to recover greater amounts of damages for the items of damage listed in their respective statements of claim. The district court held, "The Court finds a significant difference in the amounts asked for from the time of the demand letter/statement of claim to the evidence offered at trial." An increase in the amounts asked for items of damage included in the statement of claim is not seeking to recover for a new item of damage. Therefore, neither of them waived their entitlement to attorney fees. The district court erred as a matter of law when it concluded that the plaintiffs' increased request for damages at trial constituted a significant new item of damage that precluded them from obtaining fees under Section 12-120(4). We therefore, reverse. Since we find neither Bennett nor Walton requested a new item of damage, we need not consider the issue of whether any new request was "significant."

8

Before concluding, an observation regarding the operation of this fee statute is appropriate. It is rather apparent that Section 12-120(4) was designed to avert litigation in small-dollar personal injury cases by encouraging claimants to make reasonable settlement demands and by encouraging tortfeasors, or their insurers, to make reasonable settlement tenders. In making a pre-litigation payment demand, the claimant must lay his or her cards on the table, outlining all injuries and damages for which recovery is claimed. The tortfeasor or insurer can disqualify the plaintiff from recovering attorney fees at a subsequent trial by tendering a reasonable pre-litigation settlement—"an amount at least equal to ninety percent (90%) of the amount awarded [at trial] to the plaintiff." If the insurer tenders an inadequate settlement or makes no tender, the plaintiff may recover attorney fees at a subsequent trial. Thus, the claimant must act responsibly in seeking a pre-trial settlement in order to be eligible for a fee award and the insurer must act reasonably in order to avoid liability for fees.

It is unfortunate that this small-dollar case should have been the subject of so much litigation. It entailed discovery, pre-trial motions, proceedings in bankruptcy court as a result of Patrick's bankruptcy, a two-day jury trial, post-trial motions, and an appeal to this Court. Idaho Code § 12-120(4) was designed to avert lengthy and costly litigation in cases involving modest amounts. Unfortunately, that purpose has not been served here. However, the district court may take into account the apparent over-litigation of this case in determining the amount of Bennett and Walton's fee award under Section 12-120(4).

**D.      Bennett and Walton are entitled to fees on appeal, and Patrick is not.**

Both parties seek fees on appeal.  Bennett and Walton request fees under I.C. § 12-120(4). Patrick seeks fees under I.C. § 12-121.  A prevailing party on appeal, who was entitled to fees under I.C. § 12-120(4) in the district court, is also entitled to fees on appeal under Section 12-120(4). *See Contreras v. Rubley*, 142 Idaho 573, 579, 130 P.3d 1111, 1117 (2006). Bennett and Walton are prevailing parties here and were entitled to fees under I.C. § 12-120(4) in the court below.  We thus award them fees on appeal under Section 12-120(4).  We deny Patrick's fee request because she did not prevail here.

9

### III.
### CONCLUSION

We reverse the district court's decision denying a fee award to Bennett and Walton and remand for the district court to determine the amount of their award.  We also award Bennett and Walton costs and attorney fees on appeal.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.